# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **MATTHEW K. TERRY and** | ) | |
| **TAMRA TERRY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:03CV 117 RWS (LMB)** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision

denying Matthew K. Terry and Tamra Terry's request to waive the recovery of disability and

child's insurance overpayments under Title II of the Social Security Act.  The cause was referred

to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to

28 U.S.C. § 636 (b).  On December 12, 2003, the Commissioner moved to consolidate the

Complaint of Tamra Terry, 4:03CV118CDP, with the Complaint of Matthew Terry,

4:03CV117RWS(LMB), because the claims of Matthew Terry are based on the earnings of his

mother, Tamra Terry.  (Document Number 8).  On March 9, 2004, the undersigned recommended

that defendant's Motion to Consolidate Complaints be granted.  (Doc. No. 9).  The Honorable

Rodney W. Sippel, United States District Judge, adopted the recommendation of the undersigned

and granted the Commissioner's Motion to Consolidate Cases, thus consolidating the case of

Tamra Terry into that of Matthew Terry.  (Doc. No. 10).

## Procedural History

Plaintiffs were originally granted disability benefits under Title II of the Social Security Act on April 14, 1997. (Tr 33).  Plaintiff Tamra Terry's disabling impairments were listed as multiple sclerosis and essential hypertension.  (Id.).  Her son, plaintiff Matthew Terry, received benefits as the child of a disabled wage earner.  (Id.).  On November 6, 1998, plaintiff wrote a letter to the Social Security Administration (SSA) notifying the Administration that she resumed full-time employment on October 29, 1998.  (Tr. 54).  Plaintiff indicated in her letter that she had also provided notification to the SSA by telephone on November 4, 1998.  (Id.).

On November 19, 1999, the SSA notified plaintiffs that their benefits had ended in February 1999 because plaintiff Tamra Terry had returned to performing substantial gainful activity, and that they had been overpaid for the months of March 1999 through November 1999. (Tr. 97-101).  Plaintiffs requested review of the overpayment determination, on the basis that Tamra Terry did not engage in substantial gainful activity until November 1998, and the nine-month trial work period did not begin to run until then.  (Tr. 117-26).  The SSA reviewed the overpayment determination and found that the determination was correct.  (Tr. 128-130). Plaintiffs filed a Request for hearing by Administrative Law Judge on July 11, 2001, in which they claimed that the overpayment was not their fault.  (Tr. 132-33).  On March, 12, 2002, plaintiffs submitted a "Request for Waiver of Overpayment Recovery or Change in Repayment Rate," in which they stated that the overpayment was not their fault and that they cannot afford to pay the money back.  (Tr. 138-45).

An administrative hearing was held on July 12, 2002. (Tr. 55).  The Administrative Law

Judge (ALJ) found by written decisions dated August 28, 2002, that plaintiffs were not without fault in causing or accepting the overpayment, and that even if they were free of fault, recovery would not defeat the purposes of Title II. (Tr. 18-39). Plaintiffs then requested review of the denial of benefits by the Appeals Council of the SSA. (Tr. 7-8, 12-13). On August 13, 2003, the Appeals Council denied plaintiffs' request for review. (Tr. 4-6). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481 (2002).

## Evidence Before the ALJ

Plaintiff's administrative hearing was held on July 12, 2002. (Tr. 55). Plaintiff Tamra Terry was present and was represented by a non-attorney representative. (Tr. 57). Plaintiff Matthew Terry was not present at the hearing. (Id.). The ALJ began by summarizing the facts. (Id.). The ALJ stated that plaintiffs were awarded benefits in 1997, plaintiff Tamra Terry later returned to work, and plaintiffs' benefits then ceased. (Id.). The ALJ then noted that the SSA advised plaintiffs that benefits had been paid after plaintiffs were no longer eligible and that there was an outstanding overpayment of $7,854.50 for plaintiff Tamra Terry, and $3,528.00 for Matthew Terry. (Id.). The ALJ indicated that the SSA subsequently reduced the overpayment amount of Tamra Terry to $7,114.50, which represented the amount of money withheld by the SSA. (Id.). Plaintiff Tamra Terry agreed with the ALJ's summary of facts. (Tr. 57-58). The ALJ stated that the SSA believes that plaintiffs are not entitled to the benefits received, due to the cessation of plaintiff Tamra Terry's trial work period. (Id.).

The ALJ next questioned plaintiff's representative, Darlene McCormick. (Tr. 58). Ms. McCormick stated that she is a solo practitioner and a friend of plaintiff's. (Id.). Ms. McCormick testified that she is not charging plaintiff a fee for her services. (Id.). Ms. McCormick stated that

she had examined plaintiff's file before the hearing and that she would waive the normal opening statement of the ALJ.  (Id.).  Ms. McCormick indicated that she had some comments regarding some of the exhibits.  (Tr. 59).  At that time, the ALJ admitted the exhibits into evidence.  (Id.).  The ALJ advised plaintiff of her rights in connection with the hearing, including her right to leave the hearing at any time and the right to choose which questions to answer.  (Id.).  Plaintiff indicated that she understood these rights.  (Tr. 60).

The ALJ then examined plaintiff, who testified that she is the mother of Matthew Terry, who is nineteen years of age, and is a student at a technical school in Chicago.  (Tr. 60-61).  Plaintiff stated that she is forty-three and her birth date is March 7, 1959.  (Tr. 61).  Plaintiff testified that she filed an application for disability insurance benefits on March 3, 1997, and that she was awarded benefits.  (Id.).  Plaintiff stated that she also filed an application for survivor's disability benefits for Matthew on June 18, 1997, and that Matthew was awarded benefits.  (Id.).

The ALJ then stated that the SSA alleges that plaintiff went back to work and completed a nine-month trial work period.  (Id.).  The ALJ noted that the SSA counted monies that plaintiff earned in excess of $200 to count as months against her trial work period.  (Id.).  The ALJ stated that plaintiff claimed in her request for reconsideration that she thought the SSA should not count any months in which she had not earned at least $500.  (Id.).  Plaintiff confirmed that this was her position.  (Id.).  Plaintiff testified that she notified the SSA when she returned to work, even when she was earning only $200.  (Tr. 61-62).  Plaintiff indicated that she called and wrote a letter to notify the SSA on November 6, 1998.  (Tr. 62).  Plaintiff testified that the SSA then advised plaintiff in a November 21, 1998 letter to keep her check stubs because this information would be needed after she completed nine months of work.  (Id.).  Plaintiff stated that she kept her check

stubs as directed.  (Id.).  Plaintiff testified that she also completed a report of earnings on an annual basis.  (Tr. 63).

Plaintiff stated that on November 19, 1999, the SSA first notified her that her trial work period had been completed and that her entitlement to benefits would cease.  (Id.).  Plaintiff testified that the letter indicated that plaintiff's extended period of eligibility began in January 1998 and that they had counted the trial working period starting in April 1997, through December 1997.  (Id.).  Plaintiff stated that she did not discover that the SSA was ceasing benefits based upon work performed two years prior until November 1999, and that she had been completing annual earnings statements and submitting them to the SSA.  (Tr. 64).  Plaintiff testified that she did not ever believe that she was receiving benefits to which she was not entitled.  (Id.).  Plaintiff stated that she thought she was entitled to benefits because she believed that she had not completed the nine-month trial work period.  (Id.).  Plaintiff testified that she based this belief on statements or writings from the SSA indicating that the trial work period time did not count unless she earned at least $500 per month.  (Id.).

Plaintiff's representative interrupted and stated that the SSA brochures regarding the trial work period and substantial gainful activity are contradictory.  (Id.).  The ALJ then asked plaintiff whether the SSA literature discusses the implications of earning $200 per month in regard to the trial work period.  (Id.).  After examining the November 19, 1999 letter, plaintiff responded in the affirmative.  (Tr. 64-65).  The ALJ then inquired about SSA publication number 05-10029, which plaintiff quoted in a letter she submitted with her request for reconsideration.  (Tr. 65).  The ALJ noted that this publication states that a trial work month is any month in which a claimant earns more than $200.  (Id.).  The ALJ asked plaintiff why she was surprised that the SSA counted

months in which she earned $200 as a trial work month if she had read this publication.  (Id.).

Plaintiff stated that the publication also indicated that a claimant may earn as much as she can

without affecting her benefits.  (Id.).

Plaintiff's representative then read the following excerpt from the publication:

[t]he nine months of work must fall within a five year period before your trial work period can end.  A trial work month is any month in which you earn more than $200.  After your trial work period ends, your work is evaluated to see if it is substantial.  If your earnings do not average more than $500 a month, benefits would generally continue.

(Id.).  The ALJ then asked plaintiff's representative whether she thought this language was

confusing, to which she responded that the language was confusing to a person untrained in the

law.  (Id.).  Plaintiff's representative commented that plaintiff believed from this language that she

could earn as much as $500 without losing her benefits.  (Tr. 66).  Plaintiff then testified that she

found the language of the SSA publication to be confusing, and she believed that $500 was

controlling as opposed to $200.  (Id.).

The ALJ next explained to plaintiff that there are two prongs to overpayment.  (Id.).  The

ALJ stated that the first prong is whether the claimant is at fault by either creating the

overpayment or by knowing that the amount received was incorrect.  (Id.).  The ALJ explained

that, if the claimant is found to be without fault, then the next prong is whether the claimant can

afford to repay the overpaid funds.  (Id.).  The ALJ stated that this prong requires examining the

claimant's financial situation, including her ordinary and necessary living expenses, and then

subtracting these expenses from her earnings to determine the amount she is required to pay.

(Id.).  The ALJ then asked plaintiff to disclose all relevant financial information, including

mortgage payments, bank accounts, and investments.  (Tr. 66-67).  Plaintiff testified that her

husband owns stocks and bonds through his employer's retirement program. (Id.). Plaintiff stated that she has been married to her husband for almost twenty-four years. (Id.).

Plaintiff testified that she is still working at the present time and that her gross salary is $180 per week. (Id.). Plaintiff stated that she has been earning approximately the same amount since she returned to work in February 1999. (Tr. 68). Plaintiff testified that she performs secretarial work for a construction company and that she has been employed there for eighteen years. (Id.). Plaintiff stated that she first attempted to return to this job after she was awarded benefits in November 1997. (Id.). Plaintiff explained that she returned to work because she enjoys working and because her employer was willing to accommodate her. (Tr. 69). Plaintiff testified that when she returned to work she did so on a part-time basis, working only a couple of hours a day. (Id.). Plaintiff stated that when she first went back to work she averaged at least $200 a month. (Tr. 70). Plaintiff testified that she initially worked ten to fifteen hours a week and she currently works about twenty hours a week (Id.).

Plaintiff testified that her husband is currently working and that he has worked steadily since at least February 1999. (Tr. 70-71). Plaintiff's representative then commented that plaintiff noted on her report of work activity that her employer provided special accommodation to her, although the SSA stated in a letter that no special concessions were made. (Tr. 71). Plaintiff's representative stated that plaintiff's employer allowed plaintiff to share duties with another part-time person and allowed plaintiff many absences. (Id.). Plaintiff's representative argued that because of these concessions, plaintiff's work should have been considered "sheltered employment." (Id.). The ALJ then asked plaintiff whether she believed the services she rendered for her employer were satisfactory. (Tr. 72). Plaintiff responded that she believed the services

were satisfactory. (Id.). Plaintiff testified that her employer made concessions for her because she had been employed there so long, and that her position could be characterized as supervisory. (Id.). Plaintiff again stated that she believed she earned the money that she made. (Tr. 73).

The ALJ next questioned plaintiff about her husband's earnings. (Id.). Plaintiff testified that her husband earns $24.38 an hour working forty hours a week, and that her husband earned the same amount in February 1999. (Id.). Plaintiff stated that her husband does not receive any overtime pay. (Id.). Plaintiff testified that the balance of her savings account is approximately $300 and the balance of her checking account is approximately $200. (Id.). Plaintiff stated that she does not have any certificates of deposit, nor does she own any property other than the home in which she lives. (Tr. 74). Plaintiff testified that she is living within her means and she does not have much money left at the end of the month after paying bills. (Id.).

Plaintiff stated that her only unusual expense is her son's student loan. (Id.). Plaintiff testified that she and her husband currently pay $75 a month for their son's student loan, but the payments will gradually increase. (Id.). Plaintiff stated that she and her husband entered into a contractual relationship to make payments on their son's student loan in September 2001. (Tr. 75). Plaintiff explained that neither she nor her husband increased their hours at work to pay for the student loan. (Id.). Plaintiff testified that her son lives in an apartment and that she sends him money regularly. (Tr. 75-76).

Plaintiff testified that she pays $675 per month for her mortgage, $65 per month for gas, $125 per month for electric, $35 per month for water, and $100 per month for telephone service. (Tr. 76). Plaintiff stated that she pays approximately $474 per month for auto insurance to insure three vehicles. (Tr. 77). Plaintiff testified that she pays $600 per month for her 1998 Expedition,

which she purchased in 1998. (Id.). Plaintiff stated that she has one more year of payments on this vehicle. (Tr. 78). Plaintiff testified that she uses a cart to help navigate, and that she stores her cart in the Expedition. (Id.). Plaintiff stated that she spends about $325 per month on food. (Id.).

Plaintiff testified that she does not pay insurance premiums because her husband's employer pays all of the premiums. (Id.). Plaintiff stated that her new insurance company has paid for very few expenses in the last two years. (Tr. 79). Plaintiff explained that she pays for the majority of her medical expenses out-of-pocket. (Id.). Plaintiff's representative then commented that plaintiff believed that her Medicare Card was no longer valid, so she has not been using it, although plaintiff's representative believes that plaintiff is entitled to Medicare benefits. (Tr. 79-80). Plaintiff testified that she paid approximately $1000 the previous year in out-of-pocket medical costs. (Tr. 80).

Plaintiff further testified that she and her husband took out a loan, and that her husband's employer automatically deducts $412 per month out of her husband's paycheck for payment of this loan. (Tr. 81). Plaintiff stated that this loan was taken out to purchase items for the house and to pay off credit cards with high interest rates. (Id.). Plaintiff testified that this loan was taken out about eighteen months prior to the hearing, and it is a five to six year loan. (Id.). Plaintiff stated that the loan was taken out after plaintiff was notified of the overpayment. (Id.). Plaintiff testified that the amount of the loan is approximately $15,000. (Id.). Plaintiff stated that they used the money from the loan to install a concrete ramp to their home so the home would be accessible for plaintiff. (Id.). Plaintiff explained that she suffers from a neurological condition that affects her legs. (Id.). Plaintiff testified that they also had a lift installed in the back of

plaintiff's vehicle for her cart. (Tr. 82). Plaintiff stated that they used $5,000 or $6,000 of the loan funds to help finance their daughter's wedding the previous year. (Id.).

Plaintiff stated that she pays a friend $10 to $15 per week to clean her home because she cannot do the required bending and stooping. (Tr. 83). Plaintiff testified that she also pays someone to buy groceries for her. (Id.). Plaintiff stated that her husband is the only person who currently lives with her. (Id.).

The ALJ then allowed plaintiff's representative to make comments regarding the exhibits. (Tr. 84). Plaintiff's representative stated that on April 13, 2000, plaintiff received correspondence from the SSA indicating that the SSA was in the process of determining whether plaintiff was still disabled. (Id.). Plaintiff's representative noted that the SSA included medical forms for plaintiff to complete. (Id.). Plaintiff's representative stated that the SSA also sent plaintiff information regarding her Medicare benefits and indicated that plaintiff's Medicare benefits would end along with her disability benefits. (Id.). Plaintiff's representative stated that plaintiff had not been using her Medicare benefits because she believed these benefits had ceased, even though plaintiff's representative believes plaintiff is still entitled to the benefits. (Tr. 85). Plaintiff's representative noted that plaintiff received so many documents that it was overwhelming for plaintiff. (Id.). Plaintiff's representative indicated that plaintiff planned to go to the SSA office after the hearing to inquire about the status of her Medicare benefits. (Id.). Plaintiff's representative commented that plaintiff is an honest person, citing the fact that she did not attempt to use her Medicare benefits because she thought they may have ceased. (Id.).

The ALJ noted that plaintiff's income of $180 per week is very close to the presumptive level of substantial gainful work. (Id.). The ALJ stated that the limit is currently $787.90 per

month, although it was $700 per month in 2000, and $740 in 2001.  (Tr. 85-86).  Plaintiff testified

that her salary has not decreased in the last two-year period.  (Tr. 86).  Plaintiff stated that she

could not work any more hours if she wanted to, due to her condition, although her employer

would allow her to work more hours.  (Id.).  Plaintiff testified that she has not earned more than

$180 in the last two-year period, nor has she worked forty hours in a week.  (Id.).

Plaintiff's representative commented that the process of contesting the overpayment has

caused plaintiff much anguish and grief.  (Tr. 33).  Plaintiff's representative noted that the stress

from the hearing has aggravated plaintiff's medical condition.  (Id.).  Finally, plaintiff's

representative requested that the ALJ render a decision promptly.  (Id.).  The ALJ indicated that

he would issue a decision as soon as possible.  (Id.).

### The ALJ's Determination

The ALJ made the following findings with respect to Tamra Terry:

1.  The claimant was not entitled to benefits for the period from February 1999
    through November 1999.

2.  The claimant was overpaid benefits of $7,854.50 with a balance remaining of
    $7, 114.50.

3.  The claimant was at fault in causing and accepting the overpayment
    (20 CFR 404.507).

4.  The claimant has sufficient income and financial resources for more than ordinary
    and necessary needs.  Therefore, adjustment or recovery of the overpayment
    would not defeat the purpose of Title II.

5.  Recovery of the overpayment cannot be waived.

6.  Appropriate recovery action should be initiated.

(Tr. 27).  The ALJ's final decision reads as follows:

It is the decision of the Administrative Law Judge that the claimant was overpaid benefits; that she was not without fault in receiving and accepting the overpayment; and therefore recovery of the overpayment may not be waived.

(Tr. 28).

The ALJ made the following finding with respect to Matthew K. Terry:

1.    Tamra D. Terry was appointed representative payee for Matthew K. Terry.

2.    The representative and her son were not entitled to benefits for the period from February 1999 through November 1999.

3.    The claimant, through his representative payee, was overpaid $3,920 with a balance of $3,528.00)

4.    The representative payee was not without fault in causing and accepting the overpayment (20 CFR 404.507).

5.    The representative payee has sufficient income and financial resources for more than ordinary and necessary needs. Therefore, adjustment or recovery of the overpayment would not defeat the purpose of Title II.

6.    Recovery of the overpayment cannot be waived.

7.    Appropriate recovery action should be initiated.

(Tr. 38-39). The ALJ's final decision reads as follows:

It is the decision of the Administrative Law Judge that the claimant was overpaid benefits; that the claimant's mother, as representative payee, was not without fault in receiving and accepting the overpayment; and therefore recovery of the overpayment may not be waived.

(Tr. 39).


## Discussion

### A.    Standard of Review

Judicial review of a decision by the Social Security Administration is limited and

deferential to the agency. See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996). The

decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it.
See Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)(overturned on other grounds).
Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept
it as adequate to support a conclusion. See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir.
1998). It is not the court's task "to review the evidence and make an independent decision." See
Mapes, 82 F.3d at 262. If, after review, it is possible to draw two inconsistent positions from the
evidence and one of those positions represents the Commissioner's findings, the decision must be
upheld. See id. The reviewing court, however, must consider both evidence that supports and
evidence that detracts from the Commissioner's decision. See Johnson v. Chater, 87 F.3d 1015,
1017 (8th Cir. 1996)(citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)). "[T]he court
must also take into consideration the weight of the evidence in the record and apply a balancing
test to evidence which is contrary." Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998)(quoting
Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987)). The analysis required has been
described as a "searching inquiry." Id.

**B.    Trial Work Period Determination**

A trial work period is defined as "a period during which [a claimant] may test [his or her]
ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). During this period, a
claimant "may perform 'services'...in as many as 9 months, but these months do not have to be
consecutive." Id. After the trial work period has ended, the SSA will consider the work the
claimant did during the trial work period in determining whether the claimant's disability ended
after the trial work period. See id. A claimant "performs services" in a particular month if the
claimant earns more than $200 a month. See id. at 404.1592(b)(1)(I), Table 1.

Plaintiff was sent SSA Publication No. 05-10029, dated August 1997, which further

explains trial work periods. This publication provides:

> Trial Work Period–For nine months (not necessarily consecutive), you may earn as much
> a you can without affecting your benefits. (The nine months of work must fall within a
> five-year period before your trial work period can end.) A trial work month is any month
> in which you earn more than $200. After your trial work period ends, your work is
> evaluated to see if it is "substantial." If your earnings do not average more than $500 a
> month, benefits will generally continue. If earnings do average more than $500 a month,
> benefits will continue for a three-month grace period before they stop.

SSA Publication No. 05-10029. The "reentitlement period" is "an additional period after 9

months of trial work during which [a claimant] may continue to test [his or her] ability to work..."

20 C.F.R. § 404.1592a(a). If the claimant works during the reentitlement period, the SSA may

determine that the claimant's disability has ceased because the claimant's activity is substantial

gainful activity and the SSA will cease payment of benefits. See id.

C.    **Social Security Overpayment Recovery**

When a person has been erroneously paid more than the amount to which they are entitled

under the Social Security Act, the SSA is entitled to recoup the overpayment amounts. See 42

U.S.C. § 404 (a) (2003). When a person has been paid too much, the SSA may recoup these

overpayments by "decreas[ing] any payment under this subchapter to which such overpaid person

is entitled, or shall require such overpaid person or his estate to refund the amount in excess of

the correct amount...." 42 U.S.C. § 404 (a)(1)(A) (2003). However, §404 (b) provides that:

> In any case in which more than the correct amount of payment had been made, there shall
> be no adjustment of payments to, or recovery by the United States from, any person who
> is without fault if such adjustment or recovery would defeat the purpose of this
> subchapter or would be against equity and good conscience. In making for purposes of
> this subsection any determination of whether any individual is without fault, the
> Commissioner of Social Security shall specifically take into account any physical, mental,
> educational, or linguistic limitation such individual may have (including any lack of

facility with the English language).

42 U.S.C. § 404 (b) (2003). Thus, the SSA must waive recoupment if (1) the individual is without fault, and (2) recoupment would either defeat the purpose of the Social Security Act or be against equity or good conscience. See Pittman v. Sullivan, 911 F.2d 42, 47 (8th Cir. 1990).

Social Security Regulations provide that fault applies only to the individual, and not to the SSA. See 20 C.F.R. § 404.507 (2002). In considering whether an individual is at fault, the SSA is to consider "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has." Id. The regulations also provide that what constitutes fault on part of the individual:

> "[D]epends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under section 1814(e) of the Act, resulted from:
>
> > (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
> >
> > (b) Failure to furnish information which he knew or should have known to be material; or
> >
> > (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507 (a)-(c) (2002).

Regarding whether recoupment would "defeat the purpose of the Social Security Act," the key is whether the recoupment would "deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508 (a) (2002). Ordinary and necessary living expenses include:

(1)  Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under Title XVIII), taxes, installment payments, etc.;

(2)  Medical, hospitalization, and other similar expenses;

(3)  Expenses for the support of others for whom the individual is legally responsible; and

(4)  Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

20 C.F.R. § 404.508 (a)(1)-(4) (2002).  Recoupment will defeat the purposes of Title II of the Act "where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." Id. at § 404.508 (b).  Recoupment will "be against equity or good conscience" where an individual has "[c]hanged his or her position for the worse (Example 1) or relinquished a valuable right (Example 2) because of reliance upon a notice that a payment would be made or because of the overpayment itself," or where the individual "[w]as living in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment (Examples 3 & 4)." 20 C.F.R. § 404.509 (a)(1),(2) (2002).  Further, an "individual's financial circumstances are not material to a finding of *against equity and good conscience*." Id. at § 404.509 (b) (emphasis in original).


D.    **Plaintiffs' Request for Waiver of Overpayment Recovery**

1.     **Fault**

Plaintiffs first argue that they are entitled to a waiver of the overpayment recovery because they were "without fault" in accepting the overpayment.  Plaintiffs specifically argue that they

believed they were entitled to the benefits received based upon plaintiff Tamra Terry's reading of SSA publication No. 05-10029. Defendant argues that the record supports the ALJ's finding that plaintiffs were indeed at fault in accepting the overpayment.

In support of their argument that they were "without fault," plaintiffs point to a section of SSA publication No. 05-10029 titled "What Can Cause Benefits to Stop?" (Tr. 119). This section reads as follows:

There are two things that can cause us to decide that you are no longer disabled and to stop your benefits.

Your benefits will stop if you work at a level we consider "substantial." Usually, average earnings of $500 or more a month are considered substantial.

Your disability benefits also would stop if we decide that your medical condition has improved to the point that you are no longer disabled.

You must promptly report any improvement in your condition, your return to work and certain other events as long as you are receiving benefits. These responsibilities are explained in the booklet you will receive when benefits start.

(Tr. 119). Plaintiffs claim that, after reading this language, plaintiff Tamra Terry reasoned that her benefits would end if she began earning $500 per month. Plaintiffs state that Tamra Terry was also aware that she had a nine-month trial work period in which she could earn as much as possible, followed by a three-month grace period. Plaintiffs assert that in November 1998, the first month Tamra Terry earned $500, she notified the SSA of the change in her employment status. Plaintiffs claim that Tamra Terry believed that the nine-month trial work period began at this time and extended through July 1999. Plaintiffs argue that their three-month grace period thus began in August 1999 and extended through October 1999. Plaintiffs claim that the fact that they stopped receiving benefits in November 1999 is supportive of their position.

The undersigned finds plaintiffs' argument unpersuasive. Although plaintiffs rely on SSA publication No. 05-10029 as support for their position that a claimant must earn $500 per month to trigger the nine-month trial work period, they fail to acknowledge the section within this same document entitled "Trial Work Period." (Tr. 119). As previously discussed, this section explicitly defines a trial work period as "any month in which you earn more than $200." (Id.). Plaintiffs were undisputably aware of this section, as not only was it contained within publication No. 05-10029, but plaintiffs quoted this exact language in a December 1999 letter to the SSA. (Tr. 50). When these two sections are read together, it is clear that, although a claimant's benefits stop once the claimant averages $500 or more a month, the nine-month trial work period begins when the claimant earns $200 or more a month. Despite plaintiffs' argument to the contrary, the relevant SSA language is clear and noncontradictory.

Plaintiffs do not dispute the fact that plaintiff Tamra Terry earned in excess of $200 every month beginning in April 1997. (Pl.'s Br. At 4). As such, plaintiff's trial work period began in April 1997 and extended through December 1997. Plaintiff did not earn above $500 per month until November 1998. (Id.). The period from January 1998 through November 1998, was thus plaintiff's "reentitlement period," or period of extended eligibility. Plaintiff earned in excess of $500 per month beginning in November 1998, and continuing in December 1998, January 1998, and thereafter. (Id.). Thus, plaintiffs' eligibility for benefits ceased in February 1999, which represents the first month after the three-month grace period following the resumption of substantial gainful activity in November 1998. Accordingly, plaintiffs knew or should have known that they were not entitled to benefits received from February 1999 through November 1999.

Thus, the undersigned finds that the ALJ's determination that plaintiffs were not "without fault" in causing or accepting the overpayments is supported by substantial evidence in the record as a whole. For these reasons, the undersigned recommends that the decision of the Commissioner denying plaintiffs' request for waiver of overpayment recovery be affirmed.

### 2. Purposes of the Social Security Act and Equity and Good Conscience

Plaintiffs also argue that they are entitled to a waiver of the overpayment recovery because recovery of the overpayment would be "against equity and good conscience." Defendant argues that recovery of the overpayment would neither defeat the purposes of the Act nor be against equity and good conscience. The undersigned also finds plaintiffs' argument that recovery of the overpayment would be "against equity and good conscience" to be unpersuasive.

In order to qualify for a waiver of overpayment recovery, a claimant must show that he or she is without fault and that recovery would defeat the purpose of the Act or be against equity and good conscience. See Pittman, 911 F.2d at 47. Thus, if it is found that an individual is not "without fault" in accepting the overpayment, then the request for waiver must be denied, and no consideration of whether the recovery would defeat the purpose of the Act or be against equity and good conscience is needed. The undersigned has found that plaintiffs were not "without fault" in accepting the overpayment. No consideration of whether the recovery would defeat the purpose of the Act or be against equity and good conscience is required. However, to the extent that evidence exists on this issue, the undersigned finds that recovery would not defeat the purpose of the Act or be against equity and good conscience.

In order for recovery to "defeat the purpose of the Social Security Act" that recovery must "deprive a person of income required for ordinary and necessary living expenses." 20

C.F.R. § 404.508 (a) (2002).  Plaintiffs do not argue that recovery would deprive them of income

for ordinary and necessary living expenses.  The ALJ found that plaintiffs' total monthly family

income was $4,762 and their monthly household expenses total $4,287.  (Tr. 36-37).  This leaves

an approximate $500 differential between plaintiff's claimed expenses and income.  The ALJ thus

determined that plaintiffs have sufficient income and financial resources for more than ordinary

and necessary needs, and that recovery of the overpayment would not defeat the purpose of Title

II.  (Tr. 39).  The undersigned finds that the ALJ's decision that recovery of the overpayment

would not defeat the purpose of Title II of the Social Security Act is supported by substantial

evidence in the record as a whole.

In order for a recovery to be against equity or good conscience, an individual: (1)  must

have changed his or her position for the worse or relinquished a valuable right because of reliance

upon a notice that a payment would be made or because of the overpayment itself, or (2) must

have been living in a separate household from the overpaid person at the time of the overpayment

and not receive the overpayment. <u>See</u> 20 C.F.R. § 404.509 (a)(1),(2) (2002).  There is no

evidence in the record that plaintiffs changed their position for the worse or relinquished a

valuable right because of the overpayment or in reliance upon the overpayment being made.

Additionally, no evidence exists to show that plaintiffs were living in a separate household from

the overpaid person at the time of the overpayment and did not receive the overpayment.  Even

were plaintiff "without fault" in accepting the overpayment, recovery of the overpayment

nonetheless is not "against equity and good conscience."  Thus, the ALJ's finding that even if the

claimants were without fault, recovery of the overpayment would not be against equity and good

conscience is supported by substantial evidence in the record as a whole.

Accordingly, the undersigned recommends that the decision of the Commissioner denying plaintiffs' request for waiver of overpayment recovery be affirmed.

## <u>RECOMMENDATION</u>

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner denying plaintiffs' request for waiver of recovery of disability and child's insurance overpayments under Title II of the Social Security Act be **affirmed**.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this _____15th_____ day of August, 2005.

_Lewis M. Blanton_

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE